IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FG SRC LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 20-601-LPS |
| | : |
| XILINX, INC., | : |
| | : |
| Defendant. | : |

Stamatios Stamoulis and Richard C. Weinblatt, STAMOULIS & WEINBLATT LLC, Wilmington, Delaware

Michael W. Shore, Alfonso Garcia Chan, Ari B. Rafilson, William D. Ellerman, and Paul T. Beeler, SHORE CHAN DEPUMPO LLP, Dallas, Texas

    Attorneys for Plaintiff

Warren K. Mabey, Jr., FISH & RICHARDSON P.C., Wilmington, Delaware

David M. Hoffman, FISH & RICHARDSON P.C., Austin, Texas

Ashley A. Bolt, FISH & RICHARDSON P.C., Atlanta, Georgia

Esha Bandyopadhyay and Bryan K. Basso, FISH & RICHARDSON P.C., Redwood City, California

    Attorneys for Defendant

**MEMORANDUM OPINION**

February 10, 2021
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are two motions filed by Defendant Xilinx, Inc. ("Defendant" or "Xilinx"): a Motion to Transfer Venue to the United States District Court for the Northern District of California (D.I. 19) and a Motion to Dismiss for failure to state a claim for induced infringement (D.I. 12).[1] The Court held a teleconference on January 14, 2021 to hear argument from the parties on both motions. For the reasons set forth below, the Court will deny both motions.

**I.  BACKGROUND**

Plaintiff FG SRC LLC ("Plaintiff" or "SRC") is a limited liability company organized under the laws of Delaware. (D.I. 11 ¶ 2) It does not claim to have a principal place of business, but it has a mailing address in Dallas, Texas. (*See* D.I. 20 at 1) Plaintiff is the successor to SRC Computers, LLC, which restructured in February 2016 into three new entities: SRC, DirectStream, LLC ("DirectStream"), and SRC Labs, LLC. (D.I. 11 ¶¶ 2, 26)

Defendant Xilinx is a Delaware corporation with its principal place of business in San Jose, California, located in the Northern District of California ("Northern District"). (*Id.* ¶ 3; D.I. 20 at 2) Xilinx has no offices in Delaware, and the majority of its accused products were researched, designed, developed, and marketed in San Jose. (D.I. 20 at 2-3) A global corporation, Xilinx has over 60,000 customers and approximately 5,000 employees worldwide. (D.I. 26 at 1) In 2019, Xilinx reported revenues of more than $3 billion. (*Id.* at 2)

---

[1] Defendant's motion to dismiss also alleged that Plaintiff lacked standing to sue because then-unresolved bankruptcy proceedings diminished Plaintiff's rights to the asserted patents. (*See* D.I. 13 at 2-3, 8-10) Defendant, however, withdrew that portion of its motion to dismiss on January 29, 2021, after the bankruptcy court approved a settlement agreement that affirmed the assignment of the asserted patents to Plaintiff. (D.I. 32)

1

On January 22, 2020, DirectStream assigned the patents-in-suit – U.S. Patent Nos. 7,149,867 (the "'867 patent") and 9,153,311 (the "'311 patent") – to SRC via a foreclosure that occurred before DirectStream filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. (D.I. 11 ¶ 59; D.I. 17 at 2) On January 29, 2021, the bankruptcy court approved the settlement agreement between SRC and the trustee for DirectStream's estate that affirmed this assignment.[2] *See* Order Approving Motion of Don A. Beskrone, Chapter 7 Trustee, to Approve Settlement with FG SRC, LLC and Affiliates, In re DirectStream, LLC, No. 20-10535 (Bankr. D. Del. Jan. 29, 2021).

Meanwhile, on April 30, 2020, SRC filed the instant action, alleging that several of Xilinx's products infringe the patents-in-suit. (D.I. 1) Plaintiff filed an Amended Complaint on July 20, 2020, adding allegations of induced infringement. (D.I. 11 ¶¶ 72-84)

## II.  LEGAL STANDARDS

### A.  Motion to Transfer

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, for the convenience of the parties and witnesses and in the interests of justice. Congress intended through Section 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998).

---

[2] Between the time of assignment and the bankruptcy court's approval, Arbor Global Strategies LLC, an owner of an interest in DirectStream, alleged that SRC had defrauded DirectStream's interest holders to seize the asserted patents. (*See* D.I. 17 at 3; D.I. 18 at 1) The bankruptcy court ordered three months of discovery into this assertion and, after hearing argument from the parties, ultimately approved the settlement agreement. (*See* D.I. 18 at 1)

2

Unless the balance of convenience strongly favors transfer, the plaintiff's choice of forum should prevail. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Thus, "a transfer is not to be liberally granted." *Id.* (internal quotation marks omitted). The deference afforded a plaintiff's choice of forum will ordinarily apply as long as a plaintiff has selected the forum for some legitimate reason. *See, e.g., Medtronic, Inc. v. Boston Sci. Corp.*, 587 F. Supp. 2d 648, 654 (D. Del. 2008); *Cypress Semiconductor Corp. v. Integrated Cir. Sys., Inc.*, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001). It follows that "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Sols., Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010) (internal citations omitted).

Although "there is no definitive formula or list of the factors to consider" in assessing whether to transfer, typically a series of private and public interests are evaluated. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent they may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *See id.* The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* at 879-80.

### B. Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

The Court, however, is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### III. DISCUSSION

#### A. Appropriateness of the Transferee Venue

In determining whether transfer is appropriate, the Court must first determine whether an action could have been brought in the proposed transferee venue. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt Inc. v. E-Z-Em, Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal citations omitted). Venue is proper in a patent infringement action in "the

4

judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Xilinx asserts that it "researched, designed, developed, and marketed" most of the accused products in San Jose, and that it "sells and offers for sale at least some" of the accused products from San Jose. (*See* D.I. 28 at 2; D.I. 29 at 2) These assertions are sufficient to establish evidence of alleged infringement in the Northern District. Further, there is no dispute that Xilinx's principal place of business is in San Jose. (*See* D.I. 28 at 2) Thus, Xilinx has met its burden to show venue would have been proper in the Northern District.

### B. Application of the *Jumara* Factors

As the moving party, Xilinx bears the burden of demonstrating that the balance of convenience strongly favors transfer to the Northern District. The Court finds that Xilinx has not made such a showing. To the contrary, the balance of the applicable factors weighs in favor of maintaining this case in the District of Delaware.

#### 1. Private Interest Factors

##### a. Plaintiff's choice of forum

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal citations and quotation marks omitted). Indeed, courts normally defer to a plaintiff's choice of forum as long as the plaintiff has selected it for "some legitimate reason." *See Cypress Semiconductor Corp.*, 2001 WL 1617186, at *2.

Plaintiff states that it brought this action in Delaware because both parties are Delaware entities and because the "state of incorporation really is one of the only places where a plaintiff has certainty of establishing personal jurisdiction when bringing a patent case." (Tr. at 18; *see*

5

*also* D.I. 26 at 8) This Court "has repeatedly found that it is plainly rational and legitimate for a plaintiff to choose to sue a defendant in that defendant's state of incorporation." *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 438 (D. Del. 2015). Plaintiff's decision to sue in Delaware is rational and legitimate, so its choice of forum is entitled to, at minimum, "significant deference." *Mallinckrodt*, 670 F. Supp. 2d at 356.

The parties dispute how much weight the Court should afford Plaintiff's choice, disagreeing as to whether Delaware is Plaintiff's "home turf." *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012) (explaining that where Plaintiff sues on its "home turf," its choice of forum is entitled to "paramount consideration"). Plaintiff asserts that Delaware is its home turf because SRC was formed in the state, and so its choice should be given paramount consideration. (D.I. 26 at 7-9) Defendant counters by arguing that since SRC's principal place of business is not in Delaware, and SRC has little connection with the state, Delaware is not SRC's home turf, and so Plaintiff's choice should be given reduced weight.[3] (D.I. 20 at 7-8) Although cases have reached divergent conclusions on this point, the undersigned Judge continues to believe that an entity's state of incorporation is part of its home

---

[3] Defendant also argues that SRC's decision to assert the patents-in-suit in cases filed outside of Delaware suggests its choice of Delaware here is "arbitrary" and should be given limited weight. (*See* D.I. 20 at 8) The Court is not persuaded by this contention. It is true that one week before initiating this action, SRC asserted the '867 patent against Intel, a Delaware corporation, in the Western District of Texas. (*Id.*) During oral argument, SRC explained that its choice of venue for that action was due to the fact that Intel has a "massive presence" in the Western District and that a lot of infringement was happening there. (Tr. at 22) This, SRC noted, was not true of Xilinx in the Western District, so it chose to sue Xilinx in Delaware, where personal jurisdiction would be assured. (*Id.*) Additionally, the patents-in-suit have been asserted against Microsoft and Amazon in the Eastern District of Virginia, where those companies have large data centers that were allegedly applying the accused technology. (*See id.* at 21) Those cases were later transferred to the Western District of Washington, over Plaintiff's objections. (*Id.*) Plaintiff explained that this experience also contributed to its decision to file the instant action in Delaware instead. (*Id.* at 22)

turf. *See Altera*, 842 F. Supp. 2d at 754 (citing cases). Hence, Plaintiff's choice of forum will be treated as a paramount consideration.

### b. Defendant's forum preference

Xilinx prefers the Northern District because its principal place of business is there, most of its relevant witnesses and documents are there, and the majority of the accused products were designed and developed there. (D.I. 20 at 8-9) These are rational and legitimate reasons for a defendant's preference for an alternative forum. *See, e.g., Papst*, 126 F. Supp. 3d at 438; *Altera*, 842 F. Supp. 2d at 755.

Plaintiff unpersuasively contends that Defendant has more nefarious motivations for its requested transfer. (*See* D.I. 26 at 9-10) It argues that Defendant's delay in filing the motion to transfer until after briefing on the motion to dismiss was complete suggests that Defendant now seeks to benefit from case law in the Ninth Circuit which is purportedly more favorable to it than applicable cases in the Third Circuit. (*See id.*) Defendant credibly denies this allegation. (*See* Tr. at 23)

Thus, this factor weighs in favor of transfer. However, Defendant's forum preference is entitled to less weight than Plaintiff's. *See Altera*, 842 F. Supp. 2d at 755.

### c. Whether the claim arose elsewhere

A patent infringement claim arises wherever an infringing act takes place; however, the focus under this factor is typically on where the accused products were produced, designed, and manufactured. *See Papst*, 126 F. Supp. 3d at 439. Here, research and development of the allegedly infringing products occurred primarily in the Northern District. (*See* D.I. 20 at 9)

Further, Xilinx claims to have made only *de minimis* sales of its accused products in Delaware,[4] and "those sales pale in comparison to the acts of alleged infringement arising in the Northern District." (Tr. at 9; *see also* D.I. 33 at 1) On balance, then, this factor weighs in favor of transfer. *See Altera*, 842 F. Supp. 2d at 755; *Good Tech. Corp. v. AirWatch, LLC*, 2015 WL 296501, at *5-6 (D. Del. Jan. 21, 2015) (holding this factor weighed in favor of transfer, even where accused products were marketed and sold nationwide, because bulk of such activity occurred in proposed transferee district).

### d. Convenience of the parties

The next factor to be considered is "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. As a Delaware corporation, Xilinx faces an "uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions" in Delaware. *Altera*, 842 F. Supp. 2d at 756. Further, as an international corporation with an annual revenue of around $3 billion, Xilinx does not dispute that it has the financial resources to litigate in Delaware. (*See* D.I. 20 at 10; D.I. 26 at 2) Xilinx has failed to show (and has not really even tried) that "litigating in Delaware would pose a unique or unusual burden on [its] operations." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted).

Physically, the Northern District is more convenient for Defendant. But this reality does not warrant much weight in the analysis in this case. Most discovery is likely to take place in the Northern District even if the case remains venued in Delaware. A few hearings may occur in the

---

[4] Xilinx originally claimed to have "no record of even a single sale" in Delaware. (D.I. 20 at 10) On February 3, 2021, however, Xilinx filed a supplemental declaration acknowledging a recent discovery that it had made 26 sales of accused evaluation kits and two sales of accused Alveo cards into Delaware. (D.I. 33-1 at 2)

8

courtroom in Delaware (although some may be held remotely, as was the recent motions hearing), but few (if any) of Defendant's representatives will need to be present for them. Even a trial (assuming it is to occur) will most likely involve only one or a few company representatives attending.

Further, there is no evidence that a trial in California would impose any less physical inconvenience on SRC than one in Delaware. SRC's mailing address in Dallas, Texas, is roughly equidistant from both districts. (*See* D.I. 20 at 1)

In sum, then, this factor weighs in favor of transfer, but only slightly, and does not receive much weight. *See Altera*, 842 F. Supp. 2d at 755-56; *see also generally Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 482 (D. Del. 2011) ("Defendants have failed to demonstrate that litigating in Delaware will pose any unique or unusual burden. Accordingly, the convenience of the parties factor does not favor transfer.").

### e. Convenience of the witnesses

The next factor is "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. When assessing this factor, courts focus on the convenience of non-party witnesses. *See Altera*, 842 F. Supp. 2d at 757. Defendant bears the burden to show that the non-party witnesses would refuse to testify absent a subpoena and would thus be unavailable for trial in Delaware. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012).

Xilinx identifies four Amazon employees and four named inventors of the patents-in-suit who it expects to have relevant knowledge and may be unavailable for trial here. (D.I. 20 at 12-13) With respect to the Amazon employees, Defendant alleges that Amazon's counsel "did not commit to providing" the witnesses in Delaware. (*Id.* at 12) With nothing more, this equivocal

response is not enough to suggest these witnesses would refuse to testify absent a subpoena. *See Smart Audio*, 910 F. Supp. 2d at 732. Absent contrary evidence, it is reasonable to assume that important non-party witnesses are likely to voluntarily appear for trial (in the rare cases that actually go to trial). *See Checkpoint*, 797 F. Supp. 2d at 484. Moreover, in the Court's experience, testimony from this type of witness in a patent case is most often presented through depositions, and the Court is not at this point persuaded that the situation will be different in the instant case. (*See generally* Tr. at 25)

With respect to the named inventors, Defendant again offers no evidence they would refuse to testify absent a subpoena. Although the distance between Delaware and the inventors' (current) home states of Minnesota, Colorado, and Texas may make their attendance less likely, the record fails to show they would actually be unavailable. (*See* D.I. 20 at 13)

Thus, this factor is neutral.

### f. Location of books and records

Next, the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

It is undisputed that the majority of Xilinx's relevant books and records are in the Northern District. However, "recent technological advances have reduced the weight of this factor to virtually nothing." *Checkpoint*, 797 F. Supp. 2d at 485. Thus, this factor weighs in favor of transfer, but only slightly, and it will be given little weight in the overall balance. *See Good Tech.*, 2015 WL 296501, at *9.

### 2. Public Interest Factors

#### a. Enforceability of judgment

The parties agree that a judgment would be enforceable in either the District of Delaware or the Northern District, so this factor is neutral.

#### b. Practical considerations

The Court considers "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Xilinx argues that most of its witnesses and relevant evidence are in the Northern District; however, Defendant has raised these points with respect to other *Jumara* factors. (*See* D.I. 26 at 16-17) The Court will not "double-count" them here. *See Arbor Glob. Strategies LLC v. Xilinx, Inc.*, 2020 WL 4673832, at *5 (D. Del. Aug. 12, 2020). Since the Court finds no broader public benefit to proceeding with this case in one district or the other, this factor is neutral. *See id.*

#### c. Administrative difficulties in getting the case to trial

Defendant initially argued this factor slightly favored transfer. (*See* D.I. 20 at 15-17) During oral argument, however, Defendant seemed to change its position, stating that "the parties don't dispute that . . . courts in both districts are similarly congested." (Tr. at 7) In the Court's view, this factor is neutral.

#### d. Local interests in deciding local controversies at home

This factor is typically neutral in patent infringement cases, as patent litigation usually does not implicate local interests. *See Checkpoint*, 797 F. Supp. 2d at 486. Further, although Xilinx has significant connections with the Northern District (and is a significant employer in that District), it is also an international corporation with thousands of employees worldwide. *See Arbor*, 2020 WL 4673832, at *5 (finding this factor neutral despite Xilinx's connections to

11

Northern District). "This suggests that Defendant is not a 'local' company in the Northern District of California such that local interests are, in fact, implicated here." *Id.* (internal citations omitted). Accordingly, this factor is neutral.

### e. Public policies of the fora

Delaware encourages Delaware entities to resolve disputes in Delaware. *See Altera*, 842 F. Supp. 2d at 760. Accordingly, this factor weighs against transfer, but the Court gives it "minimal weight." *See id.*

### f. Judge's familiarity with state law in diversity cases

The parties agree this factor is inapplicable, as patent infringement claims are governed by federal law. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

### 3. Defendant Has Failed To Prove The Factors Strongly Favor Transfer

Overall, the following interests weigh against transfer: Plaintiff's choice of forum and public policy. The following interests weigh in favor of transfer: Defendant's forum preference, whether the claim arose elsewhere, the convenience of the parties, and the location of relevant evidence. All other factors are neutral or inapplicable. On the whole, and recognizing the appropriate weight to be granted to each factor, the Court concludes that Defendant has failed to satisfy its burden to show that the balance of convenience factors and interests of justice weigh strongly in favor of transfer. *See Shutte*, 431 F.2d at 25.

### C. Motion to Dismiss

Xilinx moves to dismiss SRC's claims for induced infringement. A plaintiff asserting a claim of induced infringement must show, in addition to direct infringement, that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*,

12

581 F.3d 1317, 1328 (Fed. Cir. 2009). To survive a motion to dismiss, a claim alleging induced infringement "must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal citations and quotation marks omitted). Defendant does not challenge the sufficiency of Plaintiff's pleadings for direct infringement.

### 1. Knowledge

Defendant does not dispute that it knew of the patents-in-suit. Rather, it argues Plaintiff fails to adequately plead Defendant's knowledge of infringement. (*See* D.I. 13 at 11-14) Courts have found that knowledge can be inferred based on the surrounding circumstances, taken as a whole. *See, e.g., 3Shape A/S v. Align Tech., Inc.*, 2019 WL 1416466, at *2 (D. Del. Mar. 29, 2019).

To plead Xilinx's knowledge of infringement, Plaintiff cites to: (1) 2013 notice to Xilinx that its products may involve use of SRC's patents;[5] (2) Xilinx's 2015 exploration of a potential acquisition of SRC's predecessor, suggesting Xilinx knew the SRC patents applied to its products; (3) a subpoena served on Xilinx in 2018 in a case against Amazon alleging its use of Xilinx's products infringed the patents-in-suit; and (4) Xilinx's 2018 petition for *inter partes* review of certain claims of the '311 patent, in which Xilinx admitted that Amazon was a customer and that it knew the complaint in the Amazon case involved Xilinx's products. (D.I. 17 at 13-14)

---

[5] This notice only supports knowledge of infringement of the '867 patent, as the '311 patent did not issue until 2015. (*See* D.I. 13 at 12)

13

Taken together, and drawing reasonable inferences in Plaintiff's favor, these allegations make it plausible that Xilinx had knowledge of its customers' infringement. Therefore, Plaintiff has adequately alleged knowledge.

### 2. Specific Intent

Defendant relies heavily on *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185 (D. Or. 2015), to argue that Plaintiff fails to plead intent because Plaintiff does not "specifically identify how technical documents or other activities encourage infringement." (D.I. 13 at 15) In response, Plaintiff relies on Federal Circuit and District of Delaware cases for its contention that intent can be adequately pled where it is alleged that a defendant's "marketing and/or instructions to customers encourage infringement." (D.I. 17 at 16) (citing, e.g., *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F. Supp. 2d 390, 395 (D. Del. 2013) (intent satisfied where defendant provided "technical support and services, as well as detailed explanations, instructions and information as to arrangements, applications and uses" of accused products))

Plaintiff alleges with specificity that Defendant provides product guides and customer training and support, and also markets the accused products, in a way that causes others to infringe the asserted patents. Plaintiff's allegations are similar to those in *Telecomm Innovations* and *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019), in which courts found that advertising to customers and instructing them on how to engage in an infringing use satisfied the intent requirement. Further, even if the preparation of some of Defendant's guides and other documentation pre-dates its alleged knowledge of infringement, its updates to these documents and publications of new guides after gaining the requisite knowledge could constitute continued conduct supporting an inference of intent. *See, e.g., Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778 (D. Del. 2013).

14

Taken together, and drawing reasonable inferences in Plaintiff's favor, these allegations make it plausible that Xilinx acted with specific intent to induce its customers to infringe. Therefore, Plaintiff has adequately alleged specific intent.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Xilinx's motions. An appropriate Order follows.