# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FG SRC LLC,<br><br>    Plaintiff,<br><br>v.<br><br>XILINX, INC.,<br><br>    Defendant. | Case No. 1:20-cv-00601-WCB<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF FG SRC LLC'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT XILINX, INC.'S MOTION FOR A PROTECTIVE ORDER

Dated: April 4, 2022

Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
Tel: (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

SHORE CHAN LLP
Michael W. Shore* (mshore@shorechan.com)
Alfonso Garcia Chan* (achan@shorechan.com)
Ari B. Rafilson* (arafilson@shorechan.com)
William D. Ellerman* (wellerman@shorechan.com)
Paul T. Beeler* (pbeeler@shorechan.com)
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone (214) 593-9110
Facsimile (214) 593-9111

*Counsel for Plaintiff FG SRC LLC*

* Admitted *pro hac vice*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 | |
| II. | PURPOSE OF FG SRC'S SUBPOENAS ..........................................................................1 | |
| III. | ARGUMENTS & AUTHORITIES ....................................................................................3 | |
| | A. Xilinx Failed to Carry its Burden ............................................................................3 | |
| | B. Xilinx Improperly Seeks to Shift its Burden ...........................................................5 | |
| | C. FG SRC Complied With Rule 26(g) and Conducted a Reasonable Inquiry ...........7 | |
| | D. Xilinx's Alleged Need for a Protective Order is of its own Making .......................9 | |
| IV. | CONCLUSION .................................................................................................................10 | |

## TABLE OF AUTHORITIES

**CASES:**

*Abbie Inc. v. Boehringer Ingelheim Int'l GmbH,*
　2018 WL 2337133 (D. Del. May 23, 2018)........................................................... 3, 4, 5

*Cf. Leonard v. Univ. of Delaware,*
　No. 96-360 MMS, 1997 WL158280 (D. Del. Mar. 20, 1997)..................................... 7

*Cipollone v. Liggett Grp., Inc.,*
　785 F.2d 1108 (3d Cir. 1986)................................................................................. 3, 4, 5

*Digeo, Inc. v. Audible, Inc.,*
　505 F.3d 1362 (Fed. Cir. 2007)..................................................................................... 7

*Hawk Mountain LLC v. Mirra,*
　No. 13-2083-SLR-SRF, 2016 WL 3182778 (D. Del. June 3, 2016) ........................... 7

*In re Deutsche Bank Trust Co. Americas,*
　605 F.3d 1373 (Fed. Cir. 2010)..................................................................................... 3

*In re Rubin Bros. Footwear, Inc.,*
　119 B.R. 416 (S.D.N.Y. 1990)...................................................................................... 7

*Pansy v. Borough of Stroudsburg,*
　23 F.3d 772 (3d Cir. 1994)..................................................................................... 3, 4, 5

*TecSec, Inc. v. Int'l Business Machines Corp.,*
　769 F. Supp. 2d 997 (E.D. Va. 2011) ........................................................................... 2

*Trustees of Boston Univ. v. Everlight Elecs. Co.,*
　No. 12-cv-11935-PBS, 2014 WL 12792496 (D. Mass. Sept. 8, 2014) ....................... 2

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
　No. C 12-3856 PJH, 2014 WL 4312021 (N.D. Cal. Aug. 28, 2014).......................... 2

**RULES:**

FED. R. CIV. P. 26 ..........................................................................................................*passim*

## INDEX OF EXHIBITS

In support of this Response, FG SRC attaches a true and correct copy of each of the exhibits described below and incorporates such exhibits by reference as if fully set forth herein.

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Subpoena Duces Tecum to Google LLC |
| B | Subpoena Duces Tecum to Synopsys, Inc. |
| C | Subpoena Duces Tecum to Space Exploration Technologies Corp. |
| D | Subpoena Duces Tecum to Qualcomm Incorporated |
| E | Declaration of Paul T. Beeler ("Beeler Decl.") |

I. INTRODUCTION

Defendant Xilinx, Inc.'s ("Xilinx") Opening Brief (D.I. 134) (the "Opening Brief") asks the Court to grant Xilinx a summary judgment on the induced infringement claims, not on the merits, but by denying FG SRC LLC ("FG SRC") basic discovery that Xilinx's misconduct and obstruction delayed. Xilinx's Opening Brief provides no evidence of burden or impact to Xilinx beyond what any infringer with 5,000+ customers of its infringing products should expect. Protective orders limiting discovery seeking indisputably relevant information are ***only*** warranted on a showing of good cause. Fed. R. Civ. P. 26(c). Xilinx does not, and cannot, show good cause.

II. PURPOSE OF FG SRC'S SUBPOENAS[1]

The purpose of the subpoenas Xilinx seeks to quash is to identify which of the larger Xilinx customers directly infringe independent claims 1 and 11 of the '311 patent.[2] To prove its induced infringement case, FG SRC must obtain proof from the Xilinx customers that they use:

> A computer system comprising:
> a DRAM memory;
> a reconfigurable logic device having a memory controller coupled to selected inputs and outputs of said DRAM memory; and
> a data maintenance block coupled to said reconfigurable logic device and self-refresh command inputs of said DRAM memory, said data maintenance block operative to provide stable input levels on said self-refresh command inputs while said reconfigurable logic device is reconfigured.

'311 Patent, Claim 1.

To prove these system requirements are present is impossible through publicly available information. Claim 1 goes to the internal operations of the system. The subpoenas include very simple requests designed to reveal infringement efficiently, including in multiple instances by

---

[1] Facts underlying the current status of discovery are fully detailed in FG SRC's Opening Brief in Support of its Motion to Amend Scheduling Order (D.I. 117) ("Motion to Amend Opening") and its Reply thereto (D.I. 132) ("Motion to Amend Reply"), and those facts and supporting evidence are incorporated herein by reference.
[2] United States Patent No. 9,153,311.

identifying specific documents or areas of technology relevant to the inquiry. *See, e.g.*, Ex. A at 9-10 (referencing Service Request with Xilinx); Ex. B at 9 (seeking documents related to use of Self-Refresh Functionality with emulation and prototyping platforms and products); Ex. C at 9 (seeking information related to use of Self-Refresh Functionality with LEO 4 Satellite program and associated ground-based gateway stations); Ex. D at 9 (referencing Service Request with Xilinx).[3] Using subpoenas and depositions to obtain non-public evidence of direct infringement by customers is the norm.[4] Xilinx fails to describe any other means for FG SRC to obtain the information on customers' direct infringement, including from Xilinx. *See* D.I. 117, Ex. K at 3.

With regard to Xilinx's claims that FG SRC intends to serve more subpoenas and extend discovery "so that it can continue to serve baseless third party subpoenas and harass Xilinx's customers," those claims are inaccurate. FG SRC has completed selecting Xilinx's domestic customers to subpoena. Beeler Decl. ¶ 8. Foreign customer subpoenas will be limited to those identified in the Motion to Amend Reply. *Id.*, *see* D.I. 132 at 3-4. FG SRC does not seek an

---

[3] As such, Xilinx's claim that "FG SRC has identified no basis in any of the subpoenas to believe that any customers are using the accused functionality" is clearly false. Opening Brief at 2. Rather than support its Motion with proof, substantiated by facts, Xilinx relies entirely on unsupported attorney argument, such as "FG SRC's choices of . . . targets indicates that it has done little to no investigation regarding these third parties before serving these subpoenas." *Id.* Xilinx's conclusory claims that the subpoenas are a "baseless fishing expedition" or intended to harass its customers are likewise unsupported. *Id.*

[4] The "deluge" of subpoenas Xilinx describes breathlessly represents less than 1.72% of Xilinx's total customers of the Accused Products. Beeler Decl. ¶ 7 Xilinx claims that it "did not initially oppose a reasonable number of subpoenas" but offers no explanation of how FG SRC's are unreasonable in number, particularly given that Xilinx has over 5,000 customers for the Accused Products. Opening Brief at 1. Patent infringement case law has multiple examples of numerous third-party subpoenas being warranted. *Cf., e.g., TecSec, Inc. v. Int'l Business Machines Corp.*, 769 F. Supp. 2d 997, 1013 (E.D. Va. 2011) (referencing 55 subpoenas serve to defendant's customers); *Trustees of Boston Univ. v. Everlight Elecs. Co.*, No. 12-cv-11935-PBS, 2014 WL 12792496, at *1 (D. Mass. Sept. 8, 2014) (referencing over 200 subpoenas served to defendant's customers and potential customers); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, No. C 12-3856 PJH, 2014 WL 4312021, at *6 (N.D. Cal. Aug. 28, 2014) (referencing over 150 subpoenas issued to defendants' clients).

extension of discovery to subpoena additional customers. FG SRC seeks the extension to complete the process of receiving responses to and, if necessary, enforcing the already issued domestic subpoenas, and to conduct limited foreign discovery. D.I. 132 at 1-6. Xilinx's accusations that FG SRC's subpoenas seek to harass ignores that the subpoenaed customers represent less than 1.72% of Xilinx's customers and have each purchased more than $1 million in Accused Products.

### III.  ARGUMENTS AND AUTHORITIES

#### A.  XILINX FAILED TO CARRY ITS BURDEN

Xilinx fails to show that it has or will suffer particular harm or to otherwise establish good cause for a Protective Order under Rule 26(c). As this Court noted in *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, which Xilinx cites in its Opening Brief:

> 'Rule 26(c) places the burden of persuasion on the party seeking the protective order . . . [T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.'

No. 17-1065-MSG, 2018 WL 2337133, at *1 (D. Del. May 23, 2018) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)); *see also In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("A party seeking a protective order carries the burden of showing good cause for its issuance."). "'Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Id.* (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Xilinx makes no showing of any actual injury.

Xilinx primarily asserts speculative harm to its customers, **not to itself**. *See, e.g.,* Opening Brief at 1 (asserting FG SRC's subpoenas are "a tool to harass Xilinx's customers" and "have likely already generated hundreds of thousands of dollars in legal costs for Xilinx's customers"); *id.* at 4 (asserting "FG SRC has chosen to harass Xilinx's customers"); *id.* at 5 (asserting "serious harm"

in requiring Xilinx's customers to respond to subpoenas and that "[t]hese subpoenas will likely generate hundreds of thousands of dollars in legal costs"). Xilinx has no standing to seek a Protective Order based on *cumulative* harm to others; good cause requires injury to the party seeking the Order. *See AbbVie*, 2018 WL 2337133, at *1 (quoting *Pansy*, 23 F.3d at 786). The speculative harm to Xilinx's customers, if any, is the result of Xilinx's decision to willfully infringe the FG SRC patents instead of taking a license.

Moreover, Xilinx provides no specific examples to substantiate any hypothetical harm to its customers. *See id.* (quoting *Cipollone*, 785 F.2d at 1121). It does not make even broad allegations of actual harm to its customers but rather merely posits that the subpoenas have "*likely* already generated hundreds of thousands of dollars in legal costs for Xilinx's customers." Opening Brief at 1 (emphasis added). Xilinx provides no evidence of any non-routine legal costs its customers have incurred. Even if Xilinx could seek a Protective Order based on harm to others (which it cannot), it has failed to show any clearly defined and serious injury to an individual customer based on the requirement that they provide truthful evidence in a federal lawsuit where their conduct is clearly and indisputably at issue. Xilinx failure to show such injury is unsurprising. FG SRC's subpoenas are narrowly tailored with specific requests that are not hard to respond to, such as:

> 4. Documents sufficient to show each of Your products and/or services that currently utilizes Self-Refresh Functionality in or with any Accused Product or that previously did so at any time during the period from October 2015 to present.
>
> 5. For each of Your products and/or services that utilizes Self-Refresh Functionality in or with any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify where such product or service is or was made, used, offered for sale, and/or sold.

Ex. A at 9. Indeed, contrary to Xilinx's claims of extensive legal costs, multiple customers have responded to FG SRC's subpoenas directly without involving any external counsel. Beeler Decl. ¶ 10. FG SRC's subpoenas are not unduly burdensome but reasonably seek crucial evidence of direct infringement by Xilinx's customers from the only available source.

Xilinx's claims of harm to itself are similarly lacking. Xilinx again couches such claims in purely hypothetical terms. *See, e.g.,* Opening Brief at 2 (asserting FG SRC is harassing Xilinx customers "that *likely* blame Xilinx for having to retain counsel" (emphasis added)); *id.* at 5 (claiming "subpoenas will *likely* generate hundreds of thousands of dollars in legal costs" that "directly harms Xilinx's customers' willingness to continue doing business with Xilinx" (emphasis added)). Xilinx otherwise merely concludes, without evidence, that "FG SRC has chosen to . . . damage Xilinx's business" and that there is "serious harm . . . to Xilinx's business, its business relationships with its customers, and the drain on its resources in needing to address inquiries from its customers." *Id.* at 5. Xilinx has provided *zero* evidence of these supposed harms; Xilinx has not identified even a single customer that has contacted it about a subpoena from FG SRC, much less shown that any such subpoena detrimentally affected Xilinx's business. Xilinx's broad and unsubstantiated allegations of harm do not satisfy Rule 26(c). *See AbbVie*, 2018 WL 2337133, at *1 (quoting *Cipollone*, 785 F.2d at 1121). FG SRC has no motive or incentive to harm Xilinx's business. The FG SRC patents do not expire for years. FG SRC will profit through the collection of royalties from Xilinx for years to come. Xilinx's success is ultimately FG SRC's success.

Having failed to show FG SRC's subpoenas "will work a clearly defined and serious injury" to itself, *AbbVie*, 2018 WL 2337133, at *1 (quoting *Pansy*, 23 F.3d at 786), Xilinx cannot establish good cause and its Motion must be denied.

### B.   XILINX IMPROPERLY SEEKS TO SHIFT ITS BURDEN

Xilinx attempts to shift its burden to FG SRC by invoking Rule 26(g). Throughout its Opening

Brief, Xilinx makes numerous conclusory allegations that FG SRC's third-party subpoenas are frivolous, intended only for harassment. *See, e.g.,* Opening Brief at 1 (claiming FG SRC's subpoenas are "a tool to harass Xilinx's customers and disrupt Xilinx's business); *id.* at 4 (claiming FG SRC's subpoenas are "not proper and warranted"); *id.* at 5 (claiming FG SRC's subpoenas are "frivolous"). **One glaring deficiency in Xilinx's brief is a statement of where the evidence of the customers' use of the self-refresh functionality will come from if not the subpoenas**.

Xilinx claims that it "has already identified the set of customers for which there is a basis to believe that they could possibly be using the accused functionality." *Id.* at 4. Setting aside the nonsensicality of allowing a defendant to set the scope of customer discovery based solely on its own internal investigation, Xilinx has never provided any substantive information regarding this alleged investigation—such as, its methodology, who performed it, the search parameters implemented, the qualifications of the investigator(s), etc.—from which the Court could conclude such investigation took place, much less that it was sufficient. Xilinx asks the Court to accept that its investigation revealed the *only* potential direct infringers and that FG SRC's subpoenas to other customers are therefore baseless. Such an argument is specious, as proven when Xilinx's "self-investigation" failed to identify customers that its own documents indicate infringe the patent-in-suit. *See, e.g.*, D.I. 132 at 6 (identifying service requests referencing self-refresh and data retention and associated customers). Perhaps most galling, Xilinx makes these statements of an internal investigation now when it previously stated it had no way of knowing what its customers did with the Accused Products. D.I. 117, Ex. K at 3 ("Xilinx does not have control or detailed information about how its customers choose to program and use the FPGAs they purchase.").

Similarly, Xilinx asserts, without any substantive analysis, that "the scattershot nature of FG SRC's choices in selecting third party targets for its subpoenas indicates that FG SRC did not

– 6 –

perform the 'reasonable inquiry' required by Rule 26(g)." Opening Brief at 6. Rather than identifying how FG SRC's selection of customers to subpoena is "scattershot" or how that scattershot selection clearly evidences a lack of reasonable inquiry, Xilinx summarily concludes that "FG SRC can, at best, 'have only a suspicion of infringement by' the targets of their subpoenas." Opening Brief at 6.[5] The pot calls the kettle here. Rule 11 applies to motions for protective orders. A party seeking a Protective Order cannot simply make unsubstantiated allegations that an opposing party did not comply with Rule 26(g) and thereby put the opposing party to the burden of justifying its discovery by revealing work product. *Cf. Leonard v. Univ. of Delaware*, No. 96-360 MMS, 1997 WL158280, at \*6 (D. Del. Mar. 20, 1997) (quoting advisory committee note to Rule 26(g) likening the applicable standard to that of Rule 11); *Hawk Mountain LLC v. Mirra*, No. 13-2083-SLR-SRF, 2016 WL 3182778, at \*21 (D. Del. June 3, 2016) (burden of proof under Rule 11 only shifts to non-movant when "based upon **non-frivolous** allegations" (emphasis added) (quoting *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007))); *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 428 (S.D.N.Y. 1990) (refusing to award Rule 11 sanctions where defendant "present[ed] no more than conclusory allegations to the effect that plaintiffs brought this action for any improper purpose."). Just as Xilinx has failed to carry its burden for a Protective Order under Rule 26(c), it has also made no sufficient showing to trigger Rule 26(g).

C.   **FG SRC COMPLIED WITH RULE 26(G) AND CONDUCTED A REASONABLE INQUIRY**

Notwithstanding the foregoing, though under no obligation to do so, FG SRC affirms that each

---

[5]Xilinx's argument regarding Mouser Electronics, Inc. ("Mouser") allegedly being solely a distributor of components similarly does not show FG SRC's subpoena to Mouser to be baseless. Xilinx offers no evidence as to Mouser's operations, has previously confirmed that Xilinx does not know how its customers use its products, and only speculates that it is "unlikely" that Mouser implements the infringing functionality. Opening Brief at 6.

of its subpoenas was properly signed under Rule 26(g) after FG SRC conducted a reasonable inquiry under the circumstances. Without waiving any work-product protections, FG SRC confirms that its reasonable inquiries of Xilinx's customers and its decisions as to which customers to subpoena involved consideration of a number of relevant factors, including without limitation:

1) The customer's total purchases of Accused Products, as greater purchases increase the likelihood that some portion of those purchases are used in an infringing manner;

2) The types of Accused Products purchased, as certain Accused Products require less programming or configuration by the customer to be used in an infringing manner;

3) Whether documents produced by Xilinx include any evidence that a customer uses the infringing Self-Refresh Functionality, such as the service requests attached to and identified in the Motion to Amend Reply;

4) Whether the customer offers products or services for cloud computing or data centers, like Amazon, IBM, and Microsoft, which Xilinx identified as potential users of the accused functionality;

5) Whether the customer offers products or services for the telecommunications market, like Ericsson, which Xilinx identified as a potential user of the accused functionality; and

6) Whether the customer conducts business within 100 miles of a location that FG SRC could readily use as a place of compliance for its subpoena, such as within range of FG SRC's counsel's offices in Texas or within range of FG SRC's local counsel's offices in Delaware and California. Beeler Decl. ¶ 9.

The above considerations have formed the substantial bases for FG SRC's selection of customers to subpoena and the order in which those subpoenas have been issued. *Id.* The mere fact that Xilinx is allegedly unable to discern the reasoning for FG SRC's subpoenas does not render them improper or baseless. Indeed, it would be surprising if Xilinx could readily divine all of FG SRC's reasons for selecting customers and issuing subpoenas to them as that is part of FG SRC's work-product litigation strategy.

FG SRC conducted a reasonable investigation of Xilinx's domestic customers within the time

constraints imposed by Xilinx's late disclosure of their identities.[6] Under the current Scheduling Order (D.I. 38), all discovery must be issued so as to be completed by May 2, 2022. D.I. 38 at 4. As previously noted, FG SRC believed that subpoenaed customers would require a minimum of 30 days to respond, D.I. 117 at 19, (which has proven to be insufficient for some customers, D.I. 132 at 4). FG SRC thus reasonably concluded that it had to issue all subpoenas no later than April 1, 2022. Beeler Decl. ¶ 7. Accordingly, FG SRC only had from February 23rd through April 1st— *i.e.*, 36 days—to investigate Xilinx's domestic customers use of FPGAs, (including additionally investigating end-customers and parent companies where the identified Xilinx customer does not own the end-design) and issue subpoenas accordingly. *Id.* No evidence appears in Xilinx's Motion to even suggest that FG SRC's investigations under these circumstances were not reasonable. Xilinx should not be permitted to abuse Rule 26(g) to improperly shift its burden for a Protective Order to FG SRC.

**D.    XILINX'S ALLEGED NEED FOR A PROTECTIVE ORDER IS OF ITS OWN MAKING**

Lacking any real evidence of harm, Xilinx's alleged need for and urgency in seeking a Protective Order appears to be solely based on the quantity and rapidity of the subpoenas issued by FG SRC. Opening Brief at 2 (referring to "deluge of subpoenas"); *id.*, Ex. B at 2 (same). But, as noted above, the number of FG SRC's subpoenas and the speed with which they have been issued are entirely due to Xilinx's delay and obstruction in this case. Had Xilinx identified the largest customers when originally requested, FG SRC could have issued its subpoenas in stages, focusing on its highest priority targets first and using responses to subpoenas to inform subsequent discovery. Beeler Decl. ¶ 7. Instead, Xilinx delayed identifying its customers until less than three

---

[6] Xilinx did not provide its spreadsheet of domestic customers until February 16, 2022, and it did not provide the information necessary to interpret that spreadsheet until February 23, 2022. D.I. 132, Ex. F at 2.

months before the close of discovery and then opposed, and continues to oppose, an extension of the discovery period. Xilinx thereby left FG SRC with no option but to investigate and issue subpoenas to Xilinx's customers as swiftly as possible. Under the circumstances created by Xilinx, FG SRC could not do otherwise in the diligent pursuit of its induced infringement claims. Xilinx's motion is just its latest tactic to have this case decided not on the merits but on Xilinx's gamesmanship in preventing FG SRC from taking full and fair discovery.

## IV.     CONCLUSION

Considering the total lack of supporting evidence or an explanation of where the evidence sought in the subpoenas can be obtained other than through their execution and return, Xilinx's claims that FG SRC's subpoenas are harassing are legally unsupportable and intended solely to narrow the broad scope of permitted discovery based on unsubstantiated allegations of harm and unfounded accusations of improper discovery. Lacking any merit, Xilinx's Motion should be denied.

| | |
|---|---|
| Dated: April 4, 2022 | Respectfully submitted,<br><br>*/s/ Stamatious Stamoulis*<br>Stamatios Stamoulis (#4606)<br>Richard C. Weinblatt (#5080)<br>STAMOULIS & WEINBLATT LLC<br>800 N. West Street, Third Floor<br>Wilmington, DE 19801<br>Tel: (302) 999-1540<br>stamoulis@swdelaw.com<br>weinblatt@swdelaw.com<br><br>SHORE CHAN LLP<br>Michael W. Shore* (mshore@shorechan.com)<br>Alfonso Garcia Chan* (achan@shorechan.com)<br>Ari B. Rafilson* (arafilson@shorechan.com)<br>William D. Ellerman* (wellerman@shorechan.com)<br>Paul T. Beeler* (pbeeler@shorechan.com)<br>901 Main Street, Suite 3300<br>Dallas, Texas 75202<br>Telephone (214) 593-9110<br>Facsimile (214) 593-9111<br><br>*Counsel for Plaintiff FG SRC LLC*<br><br>* Admitted *pro hac vice* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served on all counsel of record via electronic mail on April 4, 2022.

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis
