IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FG SRC LLC,<br><br>    Plaintiff,<br><br> v.<br><br>XILINX, INC.,<br><br>    Defendant. | C.A. No. 20-cv-601-WCB<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT XILINX, INC.'S REPLY BRIEF IN SUPPORT OF
MOTION FOR A PROTECTIVE ORDER**

Dated: April 6, 2022

Warren K. Mabey, Jr. (#5775)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Email: mabey@fr.com

David M. Hoffman
111 Congress Avenue, Suite 810
Austin, TX 78701
Telephone: (512) 472-5070
Email: dhoffman@fr.com

Esha Bandyopadhyay
Bryan K. Basso
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Email: bandyopadhyay@fr.com
basso@fr.com

Ashley A. Bolt
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-879-7229
Email: bolt@fr.com

Ryan M. Teel
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024

Telephone: (202) 783-5070  
Email: teel@fr.com

Daniel H. Wade  
One Marina Park Drive  
Boston, MA 02210  
Telephone: (617) 542-5070  
Email: wade@fr.com

***Attorneys for Defendant, Xilinx, Inc.***

# **TABLE OF CONTENTS**

**PAGE**

I. ARGUMENT ....................................................................................................................1

    A. FG SRC Failed to Address the Court's Questions ..........................................1

    B. FG SRC Cannot Blame Xilinx for Its Abuse of the Discovery Process ........................................................................................................................3

    C. Xilinx Continues to Suffer Harm from FG SRC's Baseless Subpoenas ........................................................................................................................5

II. CONCLUSION ................................................................................................................6

## TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH,*
   No. CV 17-1065-MSG, 2018 WL 2337133 (D. Del. May 23, 2018) ........................................6

*Leonard v. Univ. of Delaware,*
   No. CIV.A. 96-360 MMS, 1997 WL 158280 (D. Del. Mar. 20, 1997) ....................................2

*Micro Motion, Inc. v. Kane Steel Co.,*
   894 F.2d 1318, 1327 (Fed. Cir. 1990) .......................................................................................5

*TecSec, Inc. v. Int'l Business Machines Corp.,*
   769 F. Supp. 2d 997, 1013 (E.D. Va. 2011) ............................................................................4, 5

*Trustees of Boston Univ. v. Everlight Elecs. Co.,*
   No. 12-cv-11935-PBS, 2014 WL 12792496 (D. Mass. Sept. 8, 2014) ......................................4

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
   No. C 12-3856 PJH, 2014 WL 4312021 (N.D. Cal. Aug. 28, 2014) .........................................5

**I.     ARGUMENT**

    **A.     FG SRC Failed to Address the Court's Questions**

This Court, in granting Xilinx's request to expedite the briefing of this Motion, issued three instructions to FG SRC for its responsive brief:

> "In its response, SRC should set forth (1) **any evidence** that SRC has that *particular third parties* are, or have been **directly infringing** the asserted patent, U.S. Pat. No. 9,153,311 ("the '311 patent"); (2) **any evidence** that Xilinx has induced infringement of the '311 patent by *particular third parties*, and **which third parties have been so induced**; and (3) **any other** *particularized* **reason** to believe that the matters sought through the subpoenas directed to third parties are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)."

D.I. 138 (emphasis added).

The common thread in the Court's order was for FG SRC to identify any particularized connections between any of the 80+ subpoenaed parties to the specific requirements of the patent-in-suit. FG SRC does not even attempt to address any of the Court's questions for almost all of those subpoenas. While Section C (pages 7-9) of FG SRC's responsive brief purports to provide FG SRC's reasons for choosing these customers, it is simply a laundry list of general factors. With the exception of two customers, FG SRC does not even attempt to provide some *pro hoc* rationalization for how these particular factors line up with any *particular* subpoenaed party.

Those two parties are Qualcomm and Google. While Xilinx does not believe that either of those parties practice the claims of the '311 patent, the documents cited by FG SRC are at least related to the topic and those specific customers. Accordingly, Xilinx no longer seeks withdrawal of those two of the 80+ subpoenas. Notably, the two documents on which FG SRC claims to base its subpoenas of Google and Qualcomm were produced in September 2021—negating any claim that FG SRC's subpoenas to those parties was delayed by Xilinx (see below). FG SRC simply

chose to wait seven months to serve those subpoenas despite having the documents upon which it now relies.[1]

That being said, the existence of a particularized reason for two of the subpoenas does not justify the remaining (still) 80+ subpoenas. Putting aside Google and Qualcomm, FG SRC also includes subpoenas to Synopsis and Space X as exhibits to its response, but those subpoenas include no particularized connection between Synopsis and Space X and the '311 patent. Rather, as FG SRC concedes, they merely include generic statements that inquire "if" those third parties use the technology. There is no provided basis to believe that they are or might be using the '311 patent. Indeed, there is no citation to ***any*** evidence that either of those companies uses (or even considered using) self refresh during reconfiguration. For the other 75+ subpoenas, FG SRC does not point to anything particular in its responsive brief. And FG SRC's reference to foreign customers in its response (Responsive Br. at 2) is irrelevant to this motion, as those customers are not the subject of the 80+ US subpoenas—although FG SRC has notably still not pursued any foreign discovery to the best of Xilinx's knowledge.

Given FG SRC's failure to provide any particularized connections for all but two of its March subpoenas, it is fair to assume that FG SRC has nothing beyond those two. As the remainder of FG SRC's responsive brief makes clear, FG SRC has been unable to locate anyone that even arguably practices the esoteric techniques in the '311 patent, and in desperation, it has decided to engage in a seemingly random fishing expedition hoping to—by chance—come across a Xilinx customer that chose to configure its products as the patent dictates. But subpoenas can no more be used to randomly look for possible infringement than can lawsuits. *See Leonard v. Univ. of*

---

[1] It is also notable that the Qualcomm related document expressly states that Qualcomm is ***not*** using the patented techniques. However, as it is at least a connection, Xilinx no longer opposes that subpoena.

*Delaware*, No. CIV.A. 96-360 MMS, 1997 WL 158280, at *6 (D. Del. Mar. 20, 1997). While the bar to discovery may be a low one, it is still a bar, and legal process should not be employed unless there is a reasonable basis in fact.[2] Xilinx did not oppose the subpoenas served last year to those customers for whom there was a reasonable basis in fact to seek information. It now does not oppose subpoenas to the two additional parties for which FG SRC has now provided a basis. But the remainder are simply a baseless fishing expedition that should be withdrawn.

### B. FG SRC Cannot Blame Xilinx for Its Abuse of the Discovery Process

Instead of providing evidence or basis, FG SRC attempts to blame Xilinx for FG SRC's decision to issue 80+ subpoenas. The thrust of FG SRC's argument is that it needed Xilinx's complete customer list to propound subpoenas and it did not have that list until last month. First, this is factually incorrect. Starting as early as June 2021, Xilinx produced numerous documents, such as XILINX_SRC67243, XILINX_SRC67661, and XILINX_SRC67803 (all entitled "Marketing Ops Review") that identified many of the subpoenaed customers and indicated that they purchased accused products. Indeed, as noted above, the documents related to Qualcomm and Google were produced in September. FG SRC either failed to review these produced documents or, more likely, for most of these customers, realized that there is no basis in these documents on which to assume that these 80+ third parties program their FPGAs as required by the '311 patent.

---

[2] FG SRC's strategy of causing unreasonable and undue burden on Xilinx and Xilinx's customers in lieu of conducting a meaningful investigation relating to its claims is a pattern in this litigation. On April 1, 2022, FG SRC served **23,688 requests for admission of authenticity** on Xilinx, covering literally each and every document produced by Xilinx to date. It appears FG SRC has not bothered to conduct even a basic investigation to assess which of Xilinx's documents produced in the case may be relied upon as the case progresses. Xilinx has requested that FG SRC withdraw these requests. The parties met and conferred on April 5, 2022, regarding this issue, and are evaluating each other's positions. *See* Ex. 1.

However, even putting this aside, FG SRC's argument that it was forced to issue 80+ subpoenas because discovery is ending misses the fundamental problem with its conduct. Responsive Br. at 7-8. The issue is not the timing of FG SRC's action but rather its lack of reasonable basis. 80+ baseless subpoenas do not somehow become acceptable if they are spread out over three months instead of one month.

Nor does Xilinx's lack of affirmative knowledge about its customer's actions justify a baseless fishing expedition. It is common knowledge in the industry that FPGA customers do not often share their final—often confidential—designs with their supplier. Xilinx may have its own beliefs, but for most of its customers, it does not know the final designs. It is also well known that Xilinx sells its chips "blank" for programming by its customers, and it is self-evident from the claim language that the claims cannot read on a blank FPGA. Thus, FG SRC has known since it filed its case that it would need evidence of use, both to show indirect infringement and to establish any damages (to the extent liability is found). Rather than do any independent investigation over the past year since discovery opened, FG SRC elected to do nothing beyond seek a list of customers. Now it asks the Court to condone a baseless fishing expedition in place of a legitimate investigation by FG SRC.

Nor does it make any difference that FG SRC is "only" subpoenaing 1.47% of Xilinx's 3000+ customers. The issue is not merely the number of identical subpoenas, but rather the wholesale lack of basis for almost all of them.[3] If FG SRC had particularized evidence of a

---

[3] FG SRC claims that patent infringement cases regularly require numerous third-party subpoenas. Responsive Br. at 2 n.4. But subpoenas, no matter how many, must have a basis in order to be valid. FG SRC first points to the 200+ subpoenas issued in *Trustees of Boston Univ. v. Everlight Elecs. Co.*, No. 12-cv-11935-PBS, 2014 WL 12792496, at *4-5 (D. Mass. Sept. 8, 2014). But the court there found that the 200+ subpoenas—drafted by counsel for FG SRC—were *not justified* because they were "overly broad," and *struck* the subpoenas that were not supported by a reasonable basis. *Id.* FG SRC next points to the 55 subpoenas served in *TecSec, Inc. v. Int'l*

reasonable belief that 80+ customers were practicing the '311 patent, the subpoenas could well be justified, but there is no arbitrary line that allows a plaintiff to issue baseless subpoenas as long as they are only to 1% of a company's customers.

In sum, FG SRC's arguments show that FG SRC has only an "unfounded suspicion regarding . . . infringement" by the vast majority of the targets of its subpoenas, and is engaged in the type of fishing expedition that gives Xilinx "a valid reason for objecting to discovery." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990).

FG SRC claims that it is a "glaring deficiency" that Xilinx has not stated where the evidence of customers' use of self-refresh functionality will come from but from the subpoenas. Responsive Br. at 7. But this inquiry seeks to turn the analysis on its head. A hole in FG SRCs case does not justify any and all means to try and fill it. To the contrary, it is incumbent on FG SRC to use legitimate discovery means to locate evidence, and those legitimate means require a particularized basis to send subpoenas to third parties. FG SRC has not pointed to and cannot point to any evidence that the vast majority (all but two) of the targets of FG SRC's March subpoenas allegedly infringe the '311 patent. That is the relevant inquiry.

C. **Xilinx Continues to Suffer Harm from FG SRC's Baseless Subpoenas**

Next, FG SRC claims that Xilinx has failed to meet its burden to show good cause for its Motion. Responsive Br. at 3. But there is no requirement under Rule 26(c) that Xilinx wait for

---

*Business Machines Corp.*, 769 F. Supp. 2d 997, 1013 (E.D. Va. 2011), and the 150+ subpoenas served in *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, No. C 12-3856 PJH, 2014 WL 4312021, at *5-6 (N.D. Cal. Aug. 28, 2014). But the number of subpoenas in both of those cases hardly seems justified when the plaintiffs in both of those cases found no evidence whatsoever from their subpoenas. *TecSec*, 769 F. Supp. 2d at 1013 ("even after extensive discovery—comprising over 7 million pages of documents, 40 depositions, and 55 subpoenas to [the defendant's] customers—[the plaintiff] . . . failed to present even a single instance of a customer" using the accused products to infringe); *Wells Fargo*, 2014 WL 4312021, at *5-6 (despite the plaintiff "issu[ing] subpoenas to over 150 of the . . . defendants' clients," the plaintiff was still "unable to identify" any evidence to support their ***trademark*** infringement claim).

the harm to be fully realized before seeking a protective order. And FG SRC conveniently ignores the harms that Xilinx has ***already suffered*** and will ***continue to suffer*** due to FG SRC's baseless subpoenas. FG SRC claims that the harms here are "speculative," similar to the claimed harm in *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. CV 17-1065-MSG, 2018 WL 2337133 (D. Del. May 23, 2018), but there can be no doubt that harassing over 80 of a party's customers with baseless subpoenas will negatively affect that party's relationships with at least some of the targets of those subpoenas. Indeed, FG SRC's baseless subpoenas have *already* started to negatively affect Xilinx's business relationships. Unlike the situation described in *AbbVie*, Xilinx has already received complaints and confused calls from the targeted customers attempting to understand why they received subpoenas despite *never having heard* of the accused functionality.

Despite FG SRC's baseless claims otherwise, there is no question that the subpoenas will likely cause the third parties to incur hundreds of thousands of dollars in legal costs. While a handful of companies may have chosen to use internal counsel to respond to the requests, Xilinx is aware of at least fifteen different law firms already involved in the responses to the numerous subpoenas. Each attorney hired must take time to understand the posture of this case and the substance of the subpoena. Each attorney must also contact counsel for the parties, negotiate the terms of the subpoena, and resolve objections. They must also search for and review responsive documents, produce those documents (or, for almost all of these customers, confirm that no such documents exist), and follow up on those productions. Every step in the process takes time, and third parties unnecessarily incur costs at every step.

## II. CONCLUSION

For the foregoing reasons and the reasons provided in its Opening Brief, Xilinx respectfully requests that the Court grant its Motion for Protective Order by ordering that FG SRC immediately stop serving third party subpoenas to Xilinx's customers and that FG SRC withdraw any third

party subpoenas for which it cannot demonstrate a concrete basis for an alleged belief that the customer practices the asserted patent.  Alternatively, Xilinx request that the Court at least mitigate the pointless numerosity here and direct FG SRC to withdraw at least the last two batches of subpoenas (those served on March 24 and 28).  This would reduce the outstanding subpoenas to 47.  While those earlier subpoenas are equally baseless, the harm has largely already been done as these subpoenas have been issued for almost a month.  Withdrawing the most recent batches, especially those served at the end of March, has the most chance of reducing the future burden on third parties and Xilinx.

| | |
|---|---|
| Dated: April 6, 2022 | FISH & RICHARDSON P.C.<br><br>By:  /s/ *Warren K. Mabey, Jr.*<br>Warren K. Mabey, Jr. (#5775)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE  19801<br>Telephone: (302) 652-5070<br>Email:  mabey@fr.com<br><br>David M. Hoffman<br>111 Congress Avenue, Suite 810<br>Austin, TX 78701<br>Telephone: (512) 472-5070<br>Email:  dhoffman@fr.com<br><br>Esha Bandyopadhyay<br>Bryan K. Basso<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Telephone: (650) 839-5070<br>Email:  bandyopadhyay@fr.com<br>basso@fr.com<br><br>Ashley A. Bolt<br>1180 Peachtree Street NE, 21st Floor<br>Atlanta, GA 30309<br>Telephone: 404-879-7229<br>Email:  bolt@fr.com<br><br>Ryan M. Teel<br>1000 Maine Avenue, S.W., Suite 1000<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Email: teel@fr.com<br><br>Daniel H. Wade<br>One Marina Park Drive<br>Boston, MA 02210<br>Telephone: (617) 542-5070<br>Email: wade@fr.com<br><br>***Attorneys for Defendant, Xilinx, Inc.*** |

8