IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FG SRC LLC, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 20-00601-WCB |
| XILINX, INC. | § § | **FILED UNDER SEAL** |
| *Defendant*. | § § § § § | |

**MEMORANDUM OPINION AND ORDER**

In this case, plaintiff FG SRC LLC ("SRC") has accused defendant Xilinx, Inc., ("Xilinx") of infringing U.S. Patent No. 9,153,311 ("the '311 patent"). Claim construction has been completed, and fact discovery is currently scheduled to close on May 2, 2022. The parties have filed two motions relating to the discovery proceedings in this case. SRC has moved to extend the deadline for fact discovery and all subsequent deadlines by five months. Dkt. No. 116. Xilinx has moved for a protective order to limit SRC's use of third-party subpoenas. Dkt. No. 133. This order addresses both motions. SRC's motion to extend the deadline for fact discovery (Dkt. No. 116) is GRANTED, and Xilinx's motion for a protective order to limit SRC's use of third-party subpoenas (Dkt. No. 133) is GRANTED IN PART.

1. **Extension of Deadlines**

SRC moves to extend the deadline for fact discovery by five months because SRC asserts that it "cannot reasonably conduct [its] third-party discovery before the current deadline of May 2, 2022." Dkt. No. 117 at 1. SRC argues that Xilinx's delay in producing information regarding its customers, many of which are located outside of the United States, has prevented it from seeking

1

discovery that is necessary to its case. Specifically, SRC seeks information regarding which, if any, of Xilinx's customers use Xilinx's products in an infringing manner.

Earlier in this case, SRC moved to compel Xilinx to produce certain information regarding its customers, including a spreadsheet listing customers who had purchased certain products from Xilinx that can be adapted to infringe the asserted patent. *See generally* Dkt. No. 107. After a discovery teleconference, Xilinx provided such a spreadsheet to SRC, but did not provide sufficient information for SRC to understand the contents of the spreadsheet. Dkt. No. 109 at 1. I then ordered Xilinx to provide SRC information sufficient to convey "full knowledge of the meaning of terms and abbreviations used in the spreadsheet." Dkt. No. 111 at 1. The parties then agreed to resolve the dispute, and I entered an order memorializing the parties' agreement on February 25, 2022. Dkt. No. 113.

SRC asserts that Xilinx's delay in providing customer information has prevented SRC from conducting discovery with respect to those customers, in particular Xilinx's non-U.S. customers. Xilinx argues that the dispute regarding customer information "was crystallized in July 2021," and therefore any delay between July 2021 and February 2022 is attributable to SRC. Dkt. No. 126 at 1 (emphasis omitted).

I find SRC's version of events to be more persuasive. Although it is true that SRC might have brought this issue to the court in July 2021, SRC instead sought to conduct a Rule 30(b)(6) deposition of Xilinx regarding its "practices and policies related to record keeping" so as to determine how to obtain information regarding possible infringing activities by Xilinx's customers. Dkt. No. 118, Exh. M, at 7–8. SRC served Xilinx with notice of that deposition on September 1, 2021. Xilinx, however, did not make that witness available until November 30, 2021, and the deposition was ultimately taken on December 14, 2021. Dkt. No. 118, Exhs. P, R.

In that deposition, SRC learned that the "information sought by SRC could be readily obtained from Xilinx's databases in a couple of hours." Dkt. No. 117 at 11 (emphasis omitted). I found that fact to be persuasive when I ordered Xilinx to produce the spreadsheet of customer information to SRC. If SRC had approached the court prior to obtaining that information, it may not have been able to make as strong a case for obtaining Xilinx's customer list. I therefore find that SRC was sufficiently diligent in proceeding as it did in seeking that information.

Furthermore, I find that in certain respects Xilinx's conduct in discovery has been dilatory. For instance, Xilinx's failure to make a witness available for the 30(b)(6) deposition that SRC sought until almost three months after Xilinx was served with notice of that deposition contributed significantly to the delay in resolving the customer information issue between July 2021 and February 2022. And Xilinx's refusal to provide SRC with sufficient information to interpret its customer spreadsheet, which I ordered Xilinx to produce, impeded SRC's efforts to obtain the accessible information it sought regarding Xilinx's customer list. While Xilinx points out that it produced some documents earlier in the discovery process that identified many of the Xilinx customers that had purchased the accused products, Xilinx failed to produce a complete customer list, in a comprehensible form, until February 2022. For that reason, Xilinx's argument that SRC should have been more aggressive in pursuing the information that Xilinx was withholding is not persuasive.

With that said, I was disappointed to learn, from SRC's reply memorandum, that SRC has not even begun seeking discovery from foreign sources. SRC's excuse for its inactivity in that regard is that it did not begin foreign discovery because it did not believe it could complete all of the necessary foreign discovery by the current May 2, 2022, date for the close of fact discovery. Dkt. No. 132 at 4. That is, of course, no justification for SRC not at least beginning the foreign

discovery process. Notwithstanding SRC's failure to initiate foreign discovery, however, the course of the discovery in this case to date—and in particular the prospect that at least some foreign discovery will be required—justifies an extension of the period for fact discovery.

Accordingly, I will grant the five-month extension that SRC requests. That extension will require that the trial date currently set for March 20, 2023, be canceled. A revised scheduling order will be entered shortly. Any further extensions of the fact discovery deadline will be entertained only upon a robust showing of diligence by the party seeking the extension.

## 2. Protective Order

Xilinx moves for a protective order because, in its view, SRC is using subpoenas to harass its customers without a legitimate basis for doing so. More specifically, Xilinx asserts that SRC is conducting a "fishing expedition" in which it is looking for entities that have purchased Xilinx's products and may be using them in an infringing manner, even though SRC lacks a "plausible basis for believing that any of th[o]se customers use the functionality of the Asserted Patent." Dkt. No. 134 at 1–2. As a remedy, Xilinx requests that I order SRC to withdraw most of the subpoenas it has served on Xilinx's customers in this case.

To date, SRC has served 88 subpoenas on Xilinx's domestic customers. *See* Dkt. Nos. 115, 119, 120, 129, 130, 137. And although SRC has indicated that it does not intend to serve more subpoenas on Xilinx's domestic customers, it does intend to serve subpoenas on several of Xilinx's foreign customers. Dkt. No. 142, Exh. E, at ¶ 8. For the entities that are targeted by most of those subpoenas, SRC has not suggested that it has any reason to believe that Xilinx has induced them to use methods that would infringe the asserted patent or that the target entities actually practice the infringing methods. It appears that the sole predicate for the issuance of those

4

subpoenas is the fact that those entities are customers of Xilinx, and that they have purchased products from Xilinx that could be used in an infringing manner.

Xilinx argues that SRC's 88 subpoenas are intended primarily to "harass Xilinx's customers and disrupt Xilinx's business." Dkt. No. 134 at 1. The subpoenas, according to Xilinx, are designed not with the expectation that they will produce evidence of infringement by Xilinx, but principally to exert pressure on Xilinx to settle this case. *Id.* at 2. Xilinx reports that it has already received complaints from customers regarding the subpoenas and questions about why those customers have been targeted "despite never having heard of the accused functionality," and that the subpoenas will impose considerable legal expenses on Xilinx's subpoenaed customers. Dkt. No. 144 at 6. SRC responds that the subpoenas are part of a legitimate effort to identify customers of Xilinx that Xilinx has induced to infringe the asserted patent and that SRC has received responses to several of its subpoenas directly from the subpoenaed parties without the involvement of outside counsel. In its reply brief, however, Xilinx reports that at least 15 law firms have already been involved in responding to the various subpoenas directed to Xilinx's customers. *Id.* Collectively, Xilinx asserts, the burden on the subpoenaed third parties, and indirectly on Xilinx, is likely to be considerable.

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In this district, courts have identified four factors that govern the good-cause inquiry for this purpose: "relevance, need, confidentiality, and harm." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. CV 17-1065, 2018 WL 2337133, at *1 (D. Del. May 23, 2018) (quoting *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)).

5

### A. Relevance

The subpoenas, which are all quite similar, are broad in scope. And for many of the subpoenas, SRC has not provided a sufficient basis for believing that they are likely to produce evidence relevant to the current action. SRC has identified no evidence that Xilinx is inducing infringement by its customers generally, and for a large majority of the subpoenaed targets, SRC has identified no evidence that those customers practice the claimed invention.[1]

There are, however, a few customers for which broad subpoenas may be justified. For instance, Xilinx has identified a set of customers that it believes may use the accused functionality: Ericsson, Amazon, IBM, and Microsoft. Dkt. No. 134 at 4; Dkt. No. 107, Exh. 5, at 4. And SRC has identified two additional foreign customers for which it has articulated a basis to believe that they use the accused functionality: Nokia Oyj[2] and Napatech A/S. Dkt. No. 132 at 3–4. As to those customers, I find that SRC's discovery efforts are justified, as they are directed to information that may be relevant to this litigation. In addition, Xilinx acknowledges that SRC's subpoenas to Google and Qualcomm are supported by a sufficient showing to justify SRC's discovery efforts, and Xilinx therefore does not seek withdrawal of the subpoenas to those two companies. Dkt. No. 144 at 1. With respect to the remaining subpoenaed Xilinx customers,

---

[1] SRC suggests that because certain customers have spent large sums of money on Xilinx's products, those customers are likely to infringe. *See, e.g.*, Dkt. No. 132 at 3 (suggesting that because Nokia Oyj has "over $[REDACTED] in purchases of Accused Products," it is likely "that at least some portion of those Accused Products are used in an infringing manner."). But without more, the fact that a customer has purchased more than a certain dollar amount of Xilinx's products does not establish, or even suggest, that the customer is likely to practice the asserted claims.

[2] To be clear, the subpoena to Nokia Oyj is justified because "Xilinx has produced documents evidencing that Nokia Oyj and/or its subsidiaries use [the accused] functionality." Dkt. No. 132 at 3. The sum of money that Nokia Oyj has spent on Xilinx's products is not relevant to that determination. *See supra* note 1.

however, SRC has not pointed to any basis for believing that a broad subpoena to any of those customers is likely to produce evidence relevant to SRC's claims against Xilinx.

I recognize that without the use of third-party subpoenas, SRC may not be able to determine which (if any) of Xilinx's customers use Xilinx's products to infringe the asserted claims. In light of the liberal scope generally accorded to discovery, SRC is entitled to employ means to develop that information if it can be done without imposing undue burdens on third parties. The problem is that SRC's current subpoenas seek large amounts of information, much of which does not directly address the question whether the targeted customers infringe. For example, SRC's subpoenas generally request the following categories of documents:

> "1. Documents sufficient to show, on a quarterly or monthly basis, the total volume of Accused Products purchased by You during the period from October 2015 to present.
> 2. Documents sufficient to show, on a quarterly or monthly basis, the total amounts paid by You to purchase Accused Products during the period from October 2015 to present.
> 3. Documents sufficient to show each of Your products and/or services that currently incorporates or implements an Accused Product or that previously did so at any time during the period from October 2015 to present.
> 4. Documents sufficient to show each of Your products and/or services that currently utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present.
> 5. For each of Your products and/or services that utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify where such product or service is or was made, used, offered for sale, and/or sold.
> 6. For each of Your products and/or services that utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify any code, software, development tools, platforms, or other resources provided by or obtained from Xilinx and utilized, incorporated, or implemented by or in Your product or service, including without limitation Documents sufficient to identify any Xilinx IP cores used for such product or service and what Vivado Design Suite, if any, was used in the development of the product or service.
> 7. Documents sufficient to show all assistance and/or support provided by Xilinx to You related to the utilization of the Self-Refresh Functionality of any Accused Product by or for any of Your products and/or services. For clarity, such Documents include, but

7

>are not limited to, (1) project descriptions, (2) support tickets, and (3) training and instruction.
>   8. All Documents exchanged between You and Xilinx related to any utilization of the Self-Refresh Functionality of any Accused Product by or for any of Your products and/or services.
>   9. All Documents exchanged between You and any third party, including but not limited to Xilinx, related to FG SRC, the Lawsuit, and/or the '311 patent."

*See, e.g.*, Dkt. No. 142, Exh. A at 4 (SRC's subpoena to Google). Of those requests, the first three relate only to the Accused Products, i.e., Xilinx's products that, according to SRC, could be adapted to be used in an infringing manner. Those requests do not address the question whether the targeted customer actually modifies the Accused Products in a manner that could infringe the asserted patent. Requests 5 through 9 could be relevant to the current action, but only if there were a reasonable basis to believe that the targeted customer engages or has engaged in conduct that could infringe the asserted claims.

In support of its contention that most of SRC's third-party subpoenas should be quashed in their entirety, Xilinx cites *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990). In that case, the Federal Circuit held that a discovery request directed to a third party is not justified solely by virtue of the fact "[t]hat the discovery might uncover evidence showing that a plaintiff has a legitimate claim." *Id.* at 1327. The court in *Micro Motion* noted that the plaintiff sought discovery from a non-party based on a "suspicion of infringement" by the non-party. *Id.* The court added that "[a]n unfounded suspicion regarding [a third party's] infringement does not support discovery into that subject matter." *Id.* That case is distinguishable from this one, however, because in this case SRC is targeting customers who have purchased specific products from Xilinx that SRC alleges can be used to infringe the asserted claims. That evidence, although insufficient by itself to prove infringement by the third parties or induced infringement by Xilinx,

8

nevertheless rises above the level of the "unfounded suspicion" that the court in *Micro Motion* addressed. *See id.*

### b. Need

With respect to need, it is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims. Without evidence of direct infringement by a third party, SRC will be unable to establish inducement of infringement by Xilinx. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). And Xilinx has suggested at various points in this case that it is typically unaware of how specific customers use its products. As a result, the information SRC seeks is likely to be "uniquely available" from the parties that SRC is targeting with its subpoenas. *See AbbVie*, 2018 WL 2337133, at *2 (citation omitted).

### c. Confidentiality

It is not clear whether the information SRC seeks will be confidential to the third parties that are targeted by the subpoenas. I do not find that this factor weighs heavily in the analysis, however, because any confidential information of third parties can be protected, upon request of the third parties, using confidentiality designations consistent with the protective order already entered in this case. *See* Dkt. No. 49, and April 8, 2021, order of court.

### d. Harm

The potential harm to Xilinx's customers, and by extension to Xilinx itself, is significant. As noted, SRC's requests are quite broad. Each target of a subpoena will need to respond to it, and SRC acknowledges that many targets are likely to be cautious in responding, given that SRC is seeking evidence that those customers infringe the asserted patent. Dkt. No. 134, Exh. C. Because of the nature of the information sought, many of the subpoenaed parties may feel it

necessary to retain counsel before responding to the subpoenas, at significant cost. Moreover, as Xilinx points out, the imposition of costs associated with responding to the subpoenas "directly harms [those] customers' willingness to continue doing business with Xilinx." Dkt. No. 134 at 5.

It is true, as SRC suggests, that Xilinx has not provided "specific examples to substantiate any hypothetical harm to its customers." Dkt. No. 142 at 4. For example, Xilinx does not offer any evidence of communications between Xilinx and its customers regarding SRC's subpoenas. It does stand to reason, however, that the breadth of the subpoenas will require a significant commitment of resources from the targets of the subpoenas, and that customers may be less inclined to do business with Xilinx as a result. I therefore conclude that there is some potential harm to both Xilinx and its customers from the subpoenas, but that the nature and degree of that harm has not been shown with specificity.

\* \* \*

Upon weighing the four relevant factors, I conclude that discovery directed to Xilinx's customers should proceed in an iterative manner and in a different fashion with regard to different groups of third parties. With respect to the customers that Xilinx has identified as possibly using the accused functionality and the two additional foreign customers identified by SRC that are discussed above,[3] I conclude that there is a sound basis for concluding that those customers may have relevant information, and that SRC's need for that information outweighs the potential harm that may result from requests to those customers for the information sought in SRC's subpoenas. SRC therefore need not withdraw or limit the subpoenas it has issued to those customers or any similar subpoenas it may issue to those customers in the future.

---

[3] For clarity, the customers identified by Xilinx are Ericsson, Amazon, IBM, and Microsoft. The foreign customers identified by SRC are Nokia Oyj, and Napatech A/S.

Similarly, in light of Xilinx's concession with regard to the subpoenas to Google and Qualcomm, I will not require the subpoenas to those companies to be withdrawn or limited.

With respect to the remaining third-party domestic customers, however, the likelihood that those subpoenas will produce relevant information is entirely dependent on whether the targeted customer practices the accused functionality. If the targeted customer does use the accused functionality, the information SRC requests will likely be relevant to the action. But if the targeted customer does not use the accused functionality, the information SRC requests will likely have no relevance to this case. I find that at this point SRC has provided little reason to believe that any of the remaining third-party domestic customers are direct infringers of the '311 patent, or that Xilinx has induced any of those customers to infringe the patent. For that reason, the risk of harm to Xilinx and the potential burden on that group of customers outweighs the speculative possibility that the broad subpoenas to any of those customers may generate relevant evidence. *See Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (concluding that third-party customers are "entitled to protection" absent "a specific need for evidence available only from third party customers"). I will therefore allow SRC to request only the documents listed in request number 4, identified above,[4] from any of Xilinx's other domestic customers. In that more limited form, the subpoenas will allow SRC to determine whether the targeted customer practices the accused functionality while minimizing the burden on Xilinx's customers, and by extension, Xilinx.

---

[4] Request number 4 seeks "Documents sufficient to show each of Your products and/or services that currently utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present." Dkt. No. 142, Exh. A at 4.

If further discovery reveals either (1) that Xilinx has engaged in conduct that could fairly be viewed as inducing particular customers to practice the methods claimed in the asserted patent, or (2) that particular Xilinx customers are in fact practicing the accused functionality, I will permit SRC to serve a supplemental subpoena of greater breadth directed to those customers as to which a showing of possible inducement by Xilinx, or possible direct infringement by the customers has been made. For the present, however, a broad demand for information from 80 or more customers of Xilinx, based on no indication that those customers are direct infringers or that Xilinx has taken any steps that would constitute inducement for those customers to infringe, is not justified. Before serving any such supplemental subpoena, as described in this paragraph, on any of the remaining third-party customers of Xilinx, SRC must seek leave of court.

In summary, and to be clear, SRC will be allowed to issue only limited subpoenas to any third-party domestic customers of Xilinx absent a showing either that Xilinx induced infringement by the customer being targeted or that the customer being targeted uses the accused functionality. A sufficient showing exists for Amazon, IBM, and Microsoft, and the subpoenas already served on those three customers may remain in effect. Likewise, the subpoenas to Google and Qualcomm may remain in effect, and discovery directed to foreign customers Ericsson, Nokia Oyj, and Napatech A/S that is commensurate in scope with the subpoenas already served on the domestic customers will be permitted. All other subpoenas must be withdrawn except to the extent that they request documents identified in request number 4 of SRC's subpoena to Google or to the extent that those subpoenas have already been responded to. *See* Dkt. No. 142, Exh. A, at 4. SRC is directed to inform the remaining Xilinx customers on which such subpoenas have been served that in light of this court's order, they are required at this time to respond only to paragraph 4 (or the equivalent paragraph) of the subpoena. Xilinx will be permitted to confirm that instruction with

the targeted customers if it elects to do so.  No broader subpoenas directed to Xilinx's domestic customers may be issued by SRC without first seeking leave of court.

In an abundance of caution, this order has been filed under seal because some of the parties' initial briefs and exhibits regarding the present motions were filed under seal. *See, e.g.*, Dkt. Nos. 118, 126, 132.  Within three days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of the order to remain under seal.  Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

IT IS SO ORDERED.

SIGNED this 8th day of April, 2022.

*William C. Bryson*

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE